Bernard 8. Meyer, J.
In this special proceeding under section 881 of the Beal Property Actions and Proceedings Law, petitioner seeks a compulsory license to enter upon respondents’ land. The petition states that the license is required in order to make the south wall of its building waterproof; an accompanying affidavit describes the repairs more specifically as: ‘1 to apply stucco to the entire south wall of the building to repair cracks in the wall and to re-align the gutters and leaders ”. Bespondents have interposed an answer which does not directly admit or deny the allegations of the petition, hut none of the points raised in the answer and its accompanying affidavits present a triable issue of fact. The court finds on the basis of the photographic exhibits presented by respondents and the uncontroverted facts that a license should issue upon the terms hereinafter set forth and, accordingly, awards petitioner judgment.
*675 Respondents do not question the constitutionality of the statute, presumably because it has, in Chase Manhattan Bank v. Broadway, Whitney Co. (57 Misc 2d 1091), been upheld against every constitutional objection that could conceivably be urged. They do, however, argue from the second decision in that same case, reported at 59 Misc 2d 1085, that stuccoing is beyond the purview of the statute because it would add a new facing to the building. That decision, which held the repainting of an advertising sign on an exterior wall beyond the statute is, however, clearly distinguishable. The statute authorizes a license “ to make improvements or repairs ” and if stuccoing be not repairs, it clearly is an ‘(improvement3 3 and thus within the statue.
Many of the objections urged by respondent are simply irrelevant. The statute was enacted in recognition of the fact that property owners often build right up to the building line and in furtherance of the public interest in preventing the urban blight which results when such a building, for want of a license, cannot be repaired (1966 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1966, No. 65], p. 102). Thus, the fact that petitioner created the problem by building within one inch of the line has no bearing. Likewise without significance are the facts that no request in writing was made (under the statute it is enough that “ permission so to enter has been refused 3S) and that a second abutting owner has not been joined in this proceeding (his affidavit shows his willingness to consent on specified conditions, but in any event nothing in the statute or the CPLR proscribes separate proceedings or mandates joinder of all abutting owners whose property must be entered upon to complete the proposed improvement or repair). Respondents’ complaint that petitioner was aware of the problem in November, 1968 and did nothing about it, with the result that water, ice and snow were precipitated onto respondents’ property during the 1968-1969 winter season is met by the facts that the repairs now proposed include realignment of gutters and leaders and that, since, petitioner’s building was not completed until September, 1968, the delay cannot be considered unreasonable.
The possibility that the stucco when added may encroach on respondents’ property, the possibility that the existing foundation may so encroach and the claim, documented by a survey, that the coping and downspout encroach by overhanging to the extent of 0.1 inch are next urged. The statute contemplates a temporary license, not a permanent easement. Should the stucco in fact encroach, respondents may bring an action *676 in ejectment or for damages as they see fit, but respondents have presented no evidence that stucco must be applied in a coating of greater thickness than the width of petitioner’s remaining available land and the court cannot assume that fact. The possibility that the foundation may encroach is respondents’ surmise and is not borne out by their own survey, and the fact that there may be a 0.1-inch overhang, if the survey be accepted as the fact, does not make this less “an appropriate case ”, within the meaning of the statute, for the granting of a temporary license to effectuate the desired repair. Petitioner would be well advised, if such encroachment in fact exists, to have it removed in the course of realigning the gutters and leaders, but if that is not done, respondents will still have their remedies in ejectment and for damages. What is “an appropriate case ” for granting such a license involves, as above noted, not only the interests of the parties but the public interest as well. The “ clean hands ” doctrine should not be permitted to frustrate the public interest in a properly maintained building, at least not when, in the balancing of all of the interests involved, public and private, the taint is small in proportion and can be otherwise remedied.
Finally, respondents argue that petitioner has not shown that the seepage through the south wall of its building cannot be repaired by the use of an electric system on the wall or by repairing the gutters and without stuccoing, and that the wall cannot be stuccoed without removing part of respondents’ fence and damaging one or more rosebushes. For actual damages occurring .as a result of the entry, respondents have a cause of action against petitioner under the statute, and to insure payment of such damages, the court can and will require a bond. Removal and replacement of the fence section and replacement of any damaged rosebush present no obstacle, therefore. Whether the seepage problem can be met in some other way is of doubtful relevance, since the statute, as noted, covers both improvements and repairs. But if that be assumed to be a relevant factor, respondents have raised no triable issue, in the face of the affidavit of petitioner’s contractor that the proposed stuccoing .and realignment of gutters and leaders are necessary, by simply arguing that they are not. Controverting evidence, not just argument, is required before a triable issue can be found.
Judgment will accordingly be entered granting petitioner.- the right to enter upon respondents ’ property on five clear-weather days, as nearly consecutive as may be during the period begin *677 ning on the 5th day, other than a Saturday or Sunday, after service upon respondents of a copy of said judgment and ending on the 30th day after such service, upon the following terms and conditions: (1) the work to be performed shall include stuccoing of the wall, repair of cracks in the wall, and realignment of the gutters and leaders; (2) preparation of materials and overnight storage of materials and equipment other than scaffolding shall be upon property other than respondents’; (3) petitioner shall submit to the court for approval, together with its proposed judgment, a bond with corporate surety in the amount of $2,000 conditioned upon the payment of any damage award in favor of respondents and against petitioner made pursuant to section 881 of the Real Property Actions and Proceedings Law, including any damages awarded as a result of the removal and replacement of part of respondents’ fence or the replacement of any damaged rosebush, and shall serve a copy -of said bond upon respondents together with the judgment; (4) petitioner shall notify respondents in writing when it has completed work under the license and may, unless within 60 days after receipt of such notice respondents shall have commenced an action under section 881 for damages, make application on notice for discharge of said bond.