OPINION OF THE COURT
Wayne R Saitta, J.
Petitioner, North 7-8 Investors, LLC, moves this court pursuant to RPAPL 881 for an order granting petitioner a license to enter the adjoining property owned by respondent Mark A. New-garden. Respondent cross-moved to dismiss the petition and for sanctions.
The petition is granted upon the terms and conditions set forth below and the cross motion is denied.
Petitioner, North 7-8 Investors, LLC, is the owner of the property located on block 2322, lots 10, 11, 28, and 30, in the North- *625 side neighborhood of Williamsburg, Brooklyn. Respondent Mark A. Newgarden resides at and is the owner of 18 Havemeyer Street, Brooklyn, New York (block 2322, lot 18), which abuts part of petitioner’s property. Specifically the rear wall of respondent’s one-story garage which is on his west property line abuts approximately 25 feet of petitioner’s east property line. Petitioner’s property is an irregularly shaped parcel that runs the full width of block 2322 from North 7th to North 8th Street and is approximately 180,000 square feet.
According to the testimony of Tomer Yogev, petitioner’s project manager, the petitioner is currently developing two seven-story buildings on the property that will contain 159 residential units.
Originally, petitioner sought a license to gain access to respondent’s property to shore respondent’s garage, and to place a protective covering on a deck built on top of respondent’s garage roof in order to protect the roof deck during construction of the buildings. Petitioner also sought a license for temporary scaffold that would project into respondent’s air space in order to allow workers to complete and waterproof the facade of one of the new buildings.
Petitioner sought access to shore the rear wall of respondent’s garage because the New York City Department of Buildings (DOB) had made that a condition of lifting a partial stop work order it had issued, prohibiting work on the area adjacent to respondent’s rear garage wall. This partial stop work order prevented petitioner from demolishing a portion of wall on its property that was within a few inches of respondent’s rear wall. Petitioner also sought to install a covering on the top of respondent’s roof deck, as required by DOB, to protect it from objects that might fall from petitioner’s property during the course of construction.
Respondent and petitioner engaged in lengthy negotiations over a license agreement to allow petitioner access to respondent’s property. In fact, the negotiations were begun by petitioner’s predecessor in interest. Respondent’s architect raised several objections to the manner in which the shoring work was to be done, to the manner in which the roof deck was to be protected and to the lack of completeness or specificity in the plans presented by petitioner.
Additionally, respondent seeks reimbursement for his architectural and legal fees incurred in reviewing petitioner’s proposals. The parties were unable to come to an agreement and petitioner *626 commenced this proceeding. Respondent cross-moved to dismiss the proceeding and for sanctions pursuant to Rule 130 (Rules of Chief Admin of Cts [22 NYCRR] § 130-1.1), arguing that he has not denied access but is simply insisting on reasonable protections and conditions for such access. Respondent also argues that access is not needed because petitioner could construct its building by setting the building back from the shared property line.
In response to the objections raised by respondent’s architect, petitioner modified its plans to reduce the need for access to respondent’s property. The revised plans call for no shoring of respondent’s rear garage wall and for taking down the adjacent wall on petitioner’s property with hand tools. Petitioner also revised its plans so as to no longer require underpinning of respondent’s building.
Petitioner has modified its proposed roof protection plan so that it does not have to cover respondent’s roof deck with plywood to protect the roof during the installation of windows and finishing of the building facade. Also, petitioner will no longer need to use the deck for access to scaffolding. Under the new proposed plans, petitioner will construct a cantilevered safety balcony at the third floor level of its new building which will project into respondent’s air space over his roof deck. The work platform will provide access to a scaffold attached to petitioner’s building. Netting will be installed from the building to the safety balcony to protect respondent’s property from any falling material.
Section 881 of the Real Property Actions and Proceedings Law provides that
“[wjhen an owner or lessee seeks to make improvements or repairs to real property so situated that such improvements or repairs cannot be made by the owner or lessee without entering the premises of an adjoining owner or his lessee, and permission so to enter has been refused, the owner or lessee seeking to make such improvements or repairs may commence a special proceeding for a license so to enter pursuant to article four of the civil practice law and rules. The petition and affidavits, if any, shall state the facts making such entry necessary and the date or dates on which entry is sought. Such license shall be granted by the court in an appropriate case upon such terms as justice requires. The li *627 censee shall be liable to the adjoining owner or his lessee for actual damages occurring as a result of the entry.”
The construction of a new building is an improvement of real property within the meaning of section 881. (Matter of Rosma Dev., LLC v South, 5 Misc 3d 1014[A], 2004 NY Slip Op 51369[U] [Sup Ct, Kings County 2004]; Deutsche Bank Trust v 120 Greenwich Dev. Assoc., 7 Misc 3d 1006[A], 2005 NY Slip Op 50467[U] [Sup Ct, NY County 2005].)
While respondent has shown that access to the extent originally sought by petitioner was not necessary in order to construct its new building, petitioner will still require access to respondent’s property to finish that portion of the exterior east wall of the building which abuts the rear wall of respondent’s garage. Access is deemed necessary even where the access is necessary because a building is constructed to the lot line of a property. (Sunrise Jewish Ctr. of Val. Stream v Lipko, 61 Misc 2d 673 [Sup Ct, Nassau County 1969].)
While the petition does fail to set forth the dates for which access is sought as required by the language of RPAPL 881, petitioner has stated that it seeks access for approximately one year. There is little purpose in dismissing the petition on this ground and requiring petitioner to bring a new petition when the court can simply set the duration of the license in its order.
Section 881 provides that a license shall be granted “upon such terms as justice requires.” Such terms as justice requires extends to the nature and extent of access that is necessary, the duration such access may be necessary, as well as what protections may be necessary to safeguard the adjoining owner’s property.
The statute and case law provide that petitioner is strictly liable for any damage it may cause to respondent’s property. (RPAPL 881; Sunrise Jewish Ctr. of Val. Stream v Lipko, 61 Misc 2d 673 [Sup Ct, Nassau County 1969]; MK Realty Holding, LLC v Scneider, 39 Misc 3d 1209[A], 2013 NY Slip Op 50551[U] [Sup Ct, Queens County 2013].) Nonetheless, the court is not limited to requiring bonds and insurance to ensure that petitioner will be able to compensate respondent for any damage. Justice also requires that the terms of the license provide for safeguards to prevent damage from occurring, particularly where a respondent is compelled to grant access to his home. (537 W. 27th St. Owners LLC v Mariners Gate, LLC, 2009 NY Slip Op 32360[U] [Sup Ct, NY County 2009].)
*628 In this regard, it must be remembered that section 881 compels a property owner to grant access for the benefit of another. The respondent to an 881 petition has not sought out the intrusion and does not derive any benefit from it. The court must be mindful of the fact that it is called upon to grant access after the parties have failed to reach an agreement, and must not allow either party to overreach and use the court to avoid negotiating in good faith.
The risks and costs involved in the use that a petitioner makes of its neighbor’s property should be wholly borne by the petitioner. Equity requires that the owner compelled to grant access should not have to bear any costs resulting from the access, including steps necessary to safeguard his or her property.
In this case, as a result of the review and objections of respondent’s architect, petitioner has revised its plans to reduce both the impact on and risk to respondent’s property. Petitioner will no longer shore respondent’s garage or cover his roof deck. The intrusion is limited to his air space above his deck. However, the license should include a requirement that access to his deck from the second floor of the new building be blocked and that the netting above the safety balcony be sufficient to prevent any tools and material from falling on to or damaging respondent’s building.
Respondent seeks reimbursement for expenses he incurred in retaining an architect to review petitioner’s plans, and in retaining an attorney to negotiate and draft a license agreement. He further seeks reimbursement for his attorneys’ fees incurred in opposing this petition.
In this case, the work petitioner originally proposed was fairly intrusive and potentially damaging to respondent’s home if not done correctly. This was not a case where the petitioner merely sought to place a sidewalk shed in front of respondent’s property. The original plan called for petitioner to shore the rear wall of respondent’s garage, after the south wall of the garage had already been damaged.
As a result of that damage DOB had issued a partial stop work order and ordered petitioner to shore the rear wall of respondent’s garage as a condition of allowing it to demolish a wall on its lot that was within two to four inches from respondent’s rear garage wall. Petitioner’s shoring plan submitted with its petition called for shoring the entire length of the ceiling of the garage next to the rear wall with a series of six jacks, under a cap plate and mounted on a floor plate.
*629 This work would have required vacating the garage for approximately three to four months and removing the cars and other items housed in the garage.
Respondent’s architect objected to the shoring plan on two grounds. First, the plan called for placing the shoring directly over the fill line and vent line of an underground oil tank. Second, petitioner’s architects misidentified ceiling beams as concrete when they are steel and ignored the fact that the last steel beam overlaps the plane of the door. He testified that the proper way to shore the garage wall was to install needle beams to support the end beam and take the load off the wall. Additionally, the use of needle beams would eliminate the need to vacate the garage.
During the hearing, petitioner agreed to modify its plans and use needle beams to shore the rear wall. After the hearing petitioner informed the court that DOB had agreed to allow it to remove the wall on its property that was adjacent to respondent’s rear garage wall without shoring the garage wall. Therefore, petitioner was no longer seeking access to respondent’s garage to shore the rear garage wall.
The plans submitted with the petition also called for installing a protective covering of Styrofoam and plywood on top of respondent’s roof deck to protect the deck from any falling material while the facade of the east wall of petitioner’s new building was being completed and waterproofed. Workers would also have used the protected roof deck to access scaffolding hanging off the east wall of the new building as the exterior was being finished. Respondent’s architect objected that the roof protection plan submitted was a generic plan that did not show the actual dimensions or reflect the conditions of the site. He stated the plan made no provision for drainage or security, would have necessitated removing the furniture, planters and fence existing on the roof deck, and would have prevented respondent from using his deck for over a year.
Subsequent to the hearing, petitioner informed the court that it was proposing a new roof protection plan that did not involve covering the roof deck. Petitioner now plans to construct a temporary safety balcony from the third story of the new building that would project six feet into respondent’s air space. The balcony would consist of wood planks on top of a steel deck resting on cantilevered steel beams. The plan also calls for a four-foot railing at the end of the platform and a net that would extend from the railing to the upper floors of the building to *630 protect against falling material. Workers would complete the finishing work on the exterior of the building from a scaffold attached to petitioner’s building which they would access from the safety balcony rather than from respondent’s roof deck.
At the last court date, respondent’s architect raised the objection that the new plan did not prevent access to respondent’s deck from the second floor of the new building. Based on that objection petitioner agreed to erect a fence atop of the parapet of respondent’s rear wall that would block access from the second floor of the new building. The fence would run from the second floor to the safety balcony and would be secured to the new building rather than the rear wall of respondent’s garage.
It is clear that respondent’s architect raised many valid objections to petitioner’s plans, especially to specific means and methods of construction, and that his objections resulted in changes to the plans. It is equally clear that these involved technical considerations beyond the knowledge of the average person and respondent needed to retain a design professional to review petitioner’s plans. A property owner compelled to grant a license should not be put in a position of either having to incur the costs of a design professional to ensure petitioner’s work will not endanger his property, or having to grant access without being able to conduct a meaningful review of petitioner’s plans.
Justice in this case requires that petitioner pay the respondent’s architect’s reasonable fees incurred in reviewing petitioner’s plans and making counterproposals, as well as ongoing monitoring of the work during the term of the license.
Respondent also seeks legal fees he incurred in drafting, reviewing and revising a proposed license agreement and in opposing this petition. The general rule is that absent a statute authorizing an award of attorneys’ fees, each side in a litigation must bear the cost of his or her own attorneys.
Attorneys’ fees and disbursements are considered incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, or by statute or court rule (Matter of A.G. Ship Maintenance Corp. v Lezak, 69 NY2d 1 [1986]; Mighty Midgets v Centennial Ins. Co., 47 NY2d 12, 21-22 [1979]).
The rule is based upon the high priority accorded free access to the courts and a desire to avoid placing barriers in the way of those desiring judicial redress of wrongs. The preferred remedy *631 for deterring malicious or vexatious litigation has been the use of separate, plenary actions after the challenged proceedings have concluded. (Matter of A. G. Ship Maintenance.)
Respondent states that petitioner promised to reimburse him for his architectural and attorneys’ fees. The draft of the proposed agreement included language that the petitioner would pay respondent’s reasonable attorneys’ fees incurred to date, and incurred in the future, in connection with enforcing the agreement and monitoring the work done under the license. However, the draft was never executed, and petitioner states that the parties never came to an agreement on attorneys’ fees.
The only case to directly address the issue of awarding attorneys’ fees in connection with an 881 petition is an unreported decision in 10 E. End Ave. Owners, Inc. v Two E. End Ave. Apt. Corp. (35 Misc 3d 1215[A], 2012 NY Slip Op 50712[U] [Sup Ct, NY County 2012]) which held that attorneys’ fees are not recoverable. It is not clear from the decision whether the attorneys’ fees sought were litigation related, or for drafting or review of a licensing agreement.
The decision in 10 E. End Ave. Owners, Inc. is not controlling on this court and this court declines to follow it.
RPAPL 881 authorizes the court to grant the license on such terms as justice requires. This language is broad and allows for the flexibility and full scope upon which equity depends. It is sufficient statutory authority to award reasonable attorneys’ fees as a condition of a license, where the circumstances warrant it.
Respondent’s request for attorneys’ fees, both for negotiating a proposed license agreement, and for opposing the petition, is not based on being the prevailing party in this action. The attorneys’ fees are sought as a condition of the license rather than as an incident of litigation.
Respondent’s opposition to the petition was that he has not refused petitioner access, but that petitioner had refused to agree to reasonable terms for the license, to protect respondent’s property and to reimburse him for costs he would incur because of the license. The attorneys’ fees incurred in opposing the petition in this case are not an incident of litigation but a continuation of the process of negotiating a license agreement.
Somewhat counterintuitively, if a respondent is successful in opposing an 881 petition and no license is granted then that respondent would not be entitled to attorneys’ fees for successfully opposing the petition.
*632 In a normal commercial setting, where a license agreement cannot be reached, there is no license. Where a license pursuant to RPAPL 881 is sought, the license can be compelled even though no agreement is reached, and, in that situation, the terms of the license are set in the discretion of the court.
A petition pursuant to RPAPL 881 has certain similarities to an eminent domain proceeding. A taking by eminent domain is in effect a forced sale, and a license pursuant to RPAPL 881 is in essence a forced granting of a temporary easement. Even though the primary beneficiary of both a taking by eminent domain and a license pursuant to RPAPL 881 may be a private party, the rationale for the forced sale or forced temporary easement is the benefit to the public.
In an eminent domain proceeding, the court is authorized to award the property owner attorneys’ fees where the award exceeds the condemning authority’s offer and the court deems the award of attorneys’ fees necessary to achieve just compensation. (EDPL 701.) The purpose of this section is to ensure that the owner receives the full value of the property that has been taken from him or her.
Similarly, since an 881 petition by the terms of the statute is brought after the parties have failed to reach an agreement, attorneys’ fees incurred in opposing a petition or in enforcing the terms of a license granted pursuant to an 881 petition should be recoverable as a condition of the license.
The inclusion of attorneys’ fees is not necessarily warranted in all 881 situations. In deciding whether justice requires attorneys’ fees, either for negotiating an agreement or in opposing a petition pursuant to RPAPL 881, the court must balance the equities. The court should consider the extent to which the access sought interferes with the owner’s use and enjoyment of the property, the risks it poses to the property, as well as the complexities which the access sought presents in drafting a license agreement. Also, any attorneys’ fees included as a condition of a license should be proportional to the size and scope of the project.
Attorneys’ fees are justified in this case because petitioner’s demand to make use of respondent’s property has required respondent to hire an attorney to negotiate a license agreement.
The situation in this case was very complex in that it involved not simply accessing respondent’s property in order to work on petitioner’s property, but also to do work on respondent’s prop *633 erty, specifically to shore respondent’s garage, install a plywood covering over respondent’s deck, and install an extension on respondent’s chimney.
The original work requested by petitioner raised detailed questions of how that work on respondent’s property was to be performed and his property protected. It also involved terms for the removal, storage and restoration of property in the garage and on the deck. The license agreement in this case had to be detailed and comprehensive and could not have been adequately drafted by the average person. The license agreement involved extensive negotiations, including several exchanges of proposed drafts with petitioner’s counsel.
Respondent has demonstrated that he would not voluntarily enter into a license agreement that did not provide for payment of both architects’ and attorneys’ fees incurred in reviewing and drafting the terms of the agreement. While the statute may compel him to grant access for the benefit of another, justice requires that he not be compelled to incur costs to protect his property from such access. While the access is necessary to enable petitioner to complete its improvement, it is not necessary that petitioner obtain the access without cost, particularly for a project of this size where such fees would not constitute a hardship.
Other conditions the court may impose include posting a bond, obtaining insurance coverage, agreeing to indemnify the adjacent landowner and paying for the use of the license. (Ponito Residence LLC v 12th St. Apt. Corp., 38 Mice 3d 604 [Sup Ct, NY County 2012]; Deutsche Bank Trust v 120 Greenwich Dev. Assoc., 7 Misc 3d 1006[A], 2005 NY Slip Op 50467[U] [Sup Ct, NY County 2005].)
Courts have awarded license fees as a condition of a license pursuant to RPAPL 881 (see Ponito Residence LLC v 12th St. Apt. Corp., 38 Misc 3d 604 [Sup Ct, NY County 2012]; Matter of Rosma Dev., LLC v South, 5 Misc 3d 1014[A], 2004 NY Slip Op 51369[U] [Sup Ct, Kings County 2004]; MK Realty Holding, LLC v Scneider, 39 Misc 3d 1209[A], 2013 NY Slip Op 50551[U] [Sup Ct, Queens County 2013]).
One unreported decision has held that RPAPL 881 does not authorize the imposition of a fee as a condition of a license. (10 E. End Ave. Owners, Inc. v Two E. End Ave. Apt. Corp., 35 Misc 3d 1215[A], 2012 NY Slip Op 50712[U] [Sup Ct, NY County 2012].) The court in 10 E. End Ave. Owners held that the language in the statute that a license shall be granted “upon *634 such terms as justice requires” does not warrant imposition of a license fee. (Id. at *4.) The court reasoned that the statute provided for damages but limited them to actual damages occurring as a result of the entry. (Id. at *4.)
However, this analysis ignores the fact the recovery for actual damages and a license fee compensate two entirely different things. Unlike damages, a license fee compensates the owner for the use the petitioner makes of his or her property and his or her temporary loss of enjoyment of a portion of his or her property.
Further, the court in 10 E. End Ave. Owners distinguished the decision in Matter of Rosma on the grounds that Rosma involved a “voluntary project by a developer erecting a new structure,” while in the case before it the petitioner was seeking access because it was required, by Local Law No. 11 (1998) of City of New York, to undertake the repairs which necessitated access. (Id.) The present case involves a voluntary project by a developer to build a new building, and thus is distinguishable from the facts in 10 E. End Ave. Owners.
In Ponito, the court awarded a $1,500 monthly fee as a condition of a license to maintain a sidewalk shed which extended 20 feet in front of an adjoining property. In Matter of Rosma, the court awarded a $2,500 monthly fee as a condition of a license for the limited purpose of erecting sidewalk bridging, abutting approximately 10 feet onto the sidewalk in front of respondents’ real property. In MK Realty Holding, LLC, the court awarded a $1,000 fee as a condition of a 15-day license to erect a scaffold on an adjoining property.
In the present case, the activities pursuant to the license will be more intrusive than a sidewalk shed or scaffold. Here respondent will have a cantilevered balcony protrude six feet into his air space, approximately six feet above his roof deck, for a year. While this is far less intrusive than petitioner’s original plans, it will seriously impact respondent’s use and enjoyment of his roof deck. Respondent has no backyard and the deck is his only outdoor recreational space. In light of all the circumstances a license fee of $3,500 a month is just and equitable.
Lastly, petitioner seeks access to the roof of the main portion of respondent’s building to erect an extension to respondent’s chimney, which is petitioner’s obligation under the building code. The parties have been unable to reach an agreement as to the material to be used to construct the extension. However, the construction of a chimney extension goes beyond temporary ac *635 cess and constitutes a permanent encroachment which is beyond the scope of RPAPL 881. (Matter of Broadway Enters., Inc. v Lum, 16 AD3d 413 [2d Dept 2005]; Matter of McLennon v Service 31 Corp., 9 Misc 3d 1109[A], 2005 NY Slip Op 51459[U] [Sup Ct, Kings County 2005]; Foceri v Fazio, 61 Misc 2d 606 [Sup Ct, Queens County 1969].) Therefore, that portion of the petition which seeks access to the roof of the main portion of respondent’s building must be denied.
Lastly, as petitioner has demonstrated that access to respondent’s property is necessary to complete its building, even though not as much access as originally requested, the petition was not frivolous; therefore respondent’s cross motion for sanctions should be denied.
Wherefore, the petition is granted to the extent indicated above, respondent’s cross motion is denied and it is hereby ordered that petitioner is awarded a license to enter on respondent’s property upon the following terms and conditions:
1. The license is awarded to North 7-8 Investors, LLC only and shall be for a term of one year.
2. The petitioner is granted access to the air space over respondent’s garage only, except that petitioner is authorized to place a wooden fence on the parapet of the west wall of respondent’s garage as described below.
3. Petitioner is not granted access to perform any underpinning under respondent’s garage.
4. Petitioner’s workmen and contractors are allowed access to respondent’s air space only from Mondays through Fridays, between the hours of 8:30 a.m. to 5:00 p.m.
5. Petitioner shall construct a temporary safety balcony from the third story of the building it is constructing that is cantilevered to extend no more than six feet into respondent’s air space above respondent’s garage roof deck and which conforms to the drawing entitled “Overhanging Work/Protection” by ADGI, September 13, 2013, which was marked as court exhibit I at the hearing on January 24, 2014.
6. Petitioner shall construct a wooden fence that will extend from the second floor of the new building to the bottom of the safety balcony so as to block access from the second story of the new building to respondent’s garage roof deck. Petitioner shall place the fence on the parapet of the west wall of respondent’s garage but shall not attach it to the garage wall. Petitioner shall attach the fence to its building.
*636 7. Petitioner shall not remove or alter respondent’s wooden fence, which currently encloses his roof deck.
8. Petitioner shall attach netting to the rail of the safety balcony as shown on the drawing marked as court exhibit I, and shall ensure such netting is of sufficient strength and design to prevent tools and material from falling onto respondent’s property.
9. Petitioner shall procure insurance, in the amount of $5,000,000, covering Mark A. Newgarden by name, and listing 18 Havemeyer Street including the garage as part of the covered work site, for any liability respondent may incur for property damage, personal injury, or wrongful death, including any liability under the Labor Law, as a result of petitioner’s work, whether or not caused by the negligence of petitioner or its employees, agents, contractors or subcontractors, and providing respondent first-party benefits to cover any damage to his property, including damage caused by earth movement. Petitioner shall maintain this insurance for the duration of this license.
10. Petitioner shall indemnify and hold respondent harmless to the fullest extent permitted by law for any liability, claims, damages or losses, including attorneys’ fees he may incur as a result of petitioner’s work, whether or not caused by the negligence of petitioner or its employees, agents, contractors or subcontractors.
11. Petitioner shall immediately report, in writing, to respondent any damage to respondent’s property caused by petitioner’s work.
12. Petitioner shall cure any violation placed against respondent’s property by a governmental or administrative agency as a result of petitioner’s work. Petitioner shall reimburse respondent for any fines or penalties imposed as a result of such violations.
13. Petitioner shall take all steps necessary to remove any mechanic’s lien, or other encumbrance, against respondent’s property arising from petitioner’s work or use of respondent’s air space.
14. Petitioner shall pay respondent a license fee of $3,500 a month by the fifth day of each month for the 12 months of this license.
15. Petitioner shall reimburse respondent for the reasonable architectural or design professional fees he has incurred to date and may incur in the future in reviewing and monitoring petitioner’s plans and ongoing work.
*637 16. Petitioner shall reimburse respondent for the reasonable attorneys’ fees he has incurred to date in reviewing, drafting and attempting to negotiate a license agreement and that he incurs in the future in enforcing the terms of this license.
17. Petitioner shall give an undertaking in the amount of $2 million to secure payment by petitioner of any damage to respondent’s property, to secure payment by petitioner of the license, architectural and attorneys’ fees required by this order as a condition of the license, and to secure payment by petitioner to indemnify respondent for any liability, claims, damages or losses, including attorneys’ fees, that respondent incurs as a result of petitioner’s work.
18. Petitioner shall remove the safety balcony and any other projections from respondent’s air space by the end of the term of this license.
19. The term of this license shall commence 15 days after petitioner has provided to respondent a copy of the insurance policy and the undertaking described above; and it is further ordered that any disputes as to the amount of architects’ or attorneys’ fees to which respondent may be entitled shall be submitted to this court, and either party may move this court to determine the reasonable amount of architects’ or attorneys’ fees incurred; and it is further ordered that this court retains jurisdiction over this matter to resolve any disputes over the interpretation, implementation or enforcement of this license.