**Atlas V 110 LLC v Broadway 111 Owners Corp.**

2024 NY Slip Op 32531(U)

July 23, 2024

Supreme Court, New York County

Docket Number: Index No. 150535/2024

Judge: Shahabuddeen Abid Ally

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:     <u>HON. SHAHABUDDEEN ABID ALLY</u>                  PART 16TR
                                   *Justice*

| | |
|---|---|
| ATLAS V 110 LLC, | |
| Petitioner, | **INDEX NO.**  150535/2024 |
| | **MOTION DATE**  4/8/2024 |
| -against- | **MOTION SEQ. NO.**  001 |
| BROADWAY 111 OWNERS CORP., | |
| Respondent. | **DECISION & ORDER** |

> The following e-filed documents, listed by NYSCEF document number, were read on this motion (Seq. No. 1) to/for **RPAPL § 881 (LICENSE FOR ACCESS)**: 1-8, 11, 13-23

In this proceeding, petitioner ATLAS V 110 LLC ("<u>Petitioner</u>") seeks a court-ordered license, pursuant to RPAPL § 881, to access the property of respondent BROADWAY 111 OWNERS CORP. ("<u>Respondent</u>") to install certain protective measures so that Petitioner can complete legally required façade restoration work on its own premises. Petitioner initiated this proceeding by Verified Petition and Order to Show Cause filed on January 19, 2024. The Court signed the Order to Show Cause on January 24, 2024, setting a return date of March 5, 2024. On February 21, 2024, Respondent filed an Answer and opposition to the motion. On April 2, 2024, the parties appeared before the Court via Microsoft Teams. During that appearance, Petitioner requested permission to file a reply, which request the Court granted. Petitioner filed its reply on April 8, 2024.[1] For the reasons discussed below, Petitioner is granted its requested license upon the terms set forth below.

Petitioner's property, located at 601 West 110th Street, provides low-income and student housing. Respondent's adjoining property, which also appears to provide residential housing, is

---

[1] By email dated April 8, 2024, Respondent's counsel informed the Court that it would not be seeking leave to file a surreply.

located at 600 West 111th Street and designated in the Tax Map of New York County as Block 01894, Lot 1002.

Petitioner alleges that it is required to complete restoration of the façade of its premises under the New York City Façade Inspection and Safety Program ("FISP"), formerly known as Local Law 11. It also alleges that Respondent has refused to voluntarily agree to a license permitting Petitioner access to Respondent's property to install measures designed to protect the property and its tenants from harm during the pendency of the FISP work and to make use of Respondent's airspace to perform the work. Accordingly, via this proceeding, Petitioner seeks a license that provides it with permission to:

> (a) conduct a photographic pre-constructions survey . . . ; (b) erect overhead protection on or about Respondent's property, including the rear yard of Respondent's property . . . , in accordance with the plans (the "Plans"); (c) utilize a controlled access zone . . . in the north and northwest areas as depicted in the Plans; and (d) erect suspending and/or hanging scaffolding from Petitioner's [property], which requires access to the airspace of Respondent's [p]roperty.

(Dkt. No. 1 at 2) Petitioner anticipates that the FISP work will require approximately three months to complete, but it requests a license for six months to guard against any weather-related or other unavoidable delays.

Respondent does not dispute that Petitioner's planned FISP work is legally required or that, in order to complete the work, Petitioner must be given access to Respondent's property, including its airspace, to implement the proposed protective measures and to perform the work. Nor does Respondent dispute the appropriateness of the proposed protective measures or access—indeed, the parties had negotiated and agreed in principle upon the scope and contours of each. According to Respondent, the disputes that do exist between the parties preventing them from entering a voluntary license agreement concern only fees, insurance, and indemnity. Specifically, Respondent claims that it is entitled to payment of a significant monthly license fee from Petitioner and that Petitioner should be required to maintain project-specific insurance, post a significant bond to secure payment to Respondent, provide broad indemnity to Respondent, and reimburse Respondent for its legal and professional fees incurred in connection with this proceeding.

Accordingly, the Court addresses only these areas of dispute below.

150535/2024 Atlas V 110 LLC v. Broadway 111 Owners Corp.
Mot. Seq. No. 1

Page 2 of 16

## A.    License Fee

Respondent argues that any license granted to Petitioner should be conditioned on it paying a monthly license fee of $8,600. Respondent arrives at this number by adding together the license fees allegedly imposed by courts in RPAPL § 881 proceedings in which one of the following circumstances existed:  (1) the respondent suffered temporary loss of enjoyment of a small portion of its property; (2) a pipe scaffolding was erected on the roof of the property or on the adjacent sidewalks; or (3) the petitioner made use of the respondent's airspace to complete its project. In cases where a temporary loss of enjoyment existed, Respondent claims that courts have imposed (and have been affirmed on appeal) license-fee awards of $2,000 to $2,800 per month. With respect to pipe scaffolding, Respondent claims that courts have awarded between $1,500 and $2,500 per month where the scaffolding was erected on the sidewalk in front of the property and $500 per month where the scaffolding was erected on the roof. Finally, Respondent claims that courts have awarded license fees of $3,500 per month where a petitioner sought to erect suspended scaffolding in the respondent's airspace.

According to Respondent, all three of these circumstances will exist here if Petitioner is granted its requested license. Specifically, Respondent points to the small portion of its rear courtyard that will be inaccessible to tenants during the project as a result of the controlled-access zone ("CAZ") to be constructed there; the scaffolding that will be erected over Respondent's driveway to protect the garbage dumpsters and shed areas there; and the suspended scaffolding that Petitioner will install within Respondent's airspace to perform the restoration work on Petitioner's premises. Thus, Respondent adds together the fee-award ranges (or some approximation thereof[2]) from the cases it relies on to arrive at the total license fee of $8,600 that it says should be imposed on Petitioner.

Petitioner objects to the imposition of any license fee, let alone a fee of $8,600 per month. Petitioner argues that, in considering whether to award a license fee, courts distinguish between whether the work in aid of which the license is sought is mandatory or elective and decline to award fees where it is mandatory, like here. Further, Petitioner urges that Respondent has failed

---

[2]   The sum of the highest numbers within each fee range on which Respondent relies is $8,800, rather than the $8,600 that Respondent requests. Therefore, it is unclear what specific number Respondent chose from within each range or *why* it chose that number.

150535/2024 Atlas V 110 LLC v. Broadway 111 Owners Corp.
Mot. Seq. No. 1

Page 3 of 16

to demonstrate, as allegedly required, that the licensed intrusions would "substantially interfere" with the use and enjoyment of Respondent's property, because Respondent has failed to explain how that portion of its property that the licensed intrusions would render temporarily unavailable for tenant use is currently being used by tenants. According to Petitioner's understanding, that space—a small portion of the rear courtyard—is currently used only for bicycle storage and garbage containers. Respondents, for their part, concede that the "area in question currently contains a bike rack for bicycles used by the residents" of Respondent's property. (Dkt. No. 13 at 2 n.2) Should any license fee be imposed here, Petitioner argues, it should be within the range of $1,500 to $3,000 per month, as is commensurate with fees awarded by courts for work of similar length and scope.

Petitioner also objects to Respondent's method of calculating its proposed $8,600-per-month license fee, arguing that Respondent's "piecemeal approach" is not supported by caselaw and is inconsistent with the proper method of calculation that considers the extent of the intrusion and the totality of the inconvenience imposed by the licensed activities. Petitioner also argues that the method is flawed because not every contemplated incumbrance on Respondent's property will occur contemporaneously, specifically asserting that the suspended scaffolding and CAZ will occur at different times.

RPAPL § 881 provides:

> When an owner or lessee seeks to make improvements or repairs to real property so situated that such improvements or repairs cannot be made by the owner or lessee without entering the premises of an adjoining owner or his lessee, and permission so to enter has been refused, the owner or lessee seeking to make such improvements or repairs may commence a special proceeding for a license so to enter pursuant to article four of the civil practice law and rules. . . . Such license shall be granted by the court in an appropriate case upon such terms as justice requires. The licensee shall be liable to the adjoining owner or his lessee for actual damages occurring as a result of the entry.

That a court may grant a license under § 881 "upon such terms as justice requires" has been recognized as providing the court authority to condition such license on, among other things, the payment of a license fee. *Panasia Estate, Inc. v. 29 W. 19 Condo.*, 204 A.D.3d 33, 37-38 (1st Dep't 2022). "[T]he grant of licenses pursuant to RPAPL 881 often warrants the award of contemporaneous license fees" "because '[t]he respondent to an 881 petition has not sought out intrusion and does not derive any benefit from it . . . [e]quity requires that the owner compelled

150535/2024 Atlas V 110 LLC v. Broadway 111 Owners Corp.                                    Page 4 of 16
Mot. Seq. No. 1

to grant access should not have to bear any costs resulting from the access.'" *Id.* at 37 (alterations in original) (quoting *DDG Warren LLC v. Assouline Ritz 1, LLC*, 138 A.D.3d 539, 540 (1st Dep't 2016)). "[A] license fee is warranted 'where the granted license will entail substantial interference with the use and enjoyment of the neighboring property during the [license] period, thus decreasing the value of the property during that time.'" *Id.* (quoting *DDG Warren*, 138 A.D.3d at 540). "[T]he purpose of a license fee is to compensate for loss of enjoyment and diminution in value due to loss of use," irrespective of whether "there are some actual damages, such as lost business." *Id.* at 37-38. Ultimately, whether a license fee should be awarded to a respondent in a § 881 proceeding, based on the foregoing considerations, is within the trial court's discretion. *DDG Warren*, 138 A.D.3d at 539-40.

Initially, Petitioner's claim that Respondent should not be awarded a license fee merely because the FISP work in question is legally required under Local Law 11 is unconvincing and contrary to controlling law. Petitioner relies on *10 East End Avenue Owners, Inc. v. Two East End Avenue Apartment Corp.*, 35 Misc. 3d 1215(A) (N.Y. Sup. Ct. N.Y. Cty. Apr. 23, 2012), and *East 56th Del, LLC v. 930 Third Avenue Corp.*, No. 156819/2021, 2021 WL 5277165 (N.Y. Sup. Ct. N.Y. Cty. Nov. 12, 2021), in support of its argument. But neither case provides the support claimed. In *10 East End*, the trial court expressly construed § 881's language "upon such terms as justice requires" as *not* "warrant[ing] the imposition of a monetary license fee or award to the licensor, in exchange for access." 35 Misc. 3d at *3. Of course, this holding is directly contradicted by the First Department in *Panasia Estate*. Thus, the trial court's distinguishing of a prior unreported trial court decision, in which that court had imposed a license fee, on the grounds that the project in that prior case was voluntary rather than legally mandated was done within the context of the trial court's belief that it had *no* authority under § 881 to impose a license fee at all. Further, the trial court's decision not to award a license fee in *East 56th Del* was expressly based in the respondent's failure to assert that the petitioner's FISP work would "entail substantial interference with the use and enjoyment of [p]etitioner, its tenants and other occupants" of the respondent's property, not in the fact that the work was mandated under Local Law 11. 2012 WL 5277165, at *15.

In short, *10 East End* and *East 56th Del*, taken separately or together, do not establish a rule or practice by which New York courts distinguish between voluntary and legally mandated work

when considering whether they may impose a license fee under RPAPL § 881. And nor could they in light of *Panasia Estate*, which makes clear that the basis for a license fee is loss of enjoyment and use of the respondent's property and the resulting diminution of its value. 204 A.D.3d at 37-38. A respondent may still be deprived of the use and enjoyment of its property even if the petitioner's work is required by law. *Cf. Van Dorn Holdings, LLC v. 152 W. 58th Owners Corp.*, 149 A.D.3d 518, 519 (1st Dep't 2017) ("Here, Supreme Court did not abuse its discretion in requiring petitioner to pay respondent . . . a license fee where the *necessary repairs* to petitioner's building will deprive [respondent] of the use of a portion of his property. Notwithstanding that petitioner's intrusion was for the *purpose of repairs, as opposed to new or elective construction*, [respondent] should not have to have to bear the loss uncompensated." (emphasis added)).

With that in mind, the Court turns to determining whether Respondent is entitled to a license fee and, if so, the amount of said fee. It is undisputed that Respondent plans to erect supported scaffolding and create a CAZ that will temporarily prevent Respondent's tenants from accessing and making use of a 20-foot by roughly 41-foot portion of its courtyard. As both parties acknowledge, that area is used by Respondent's tenants primarily for bicycle storage. Thus, once the CAZ is in place, tenants will need to store their bicycles elsewhere. While that may not strike Petitioner as significant, it clearly is a use of Respondent's property with which the CAZ will substantially interfere. Likewise, the contemplated suspended scaffolding will substantially interfere with Respondent's use of the airspace that it will occupy. While Respondent has not articulated any way in which the suspended scaffolding would prevent an actual current or planned use of that airspace, actual damages are not a factor in determining whether a license fee is justified in the first place. *See Panasia Estate*, 204 A.D.3d at 37. By contrast, although Respondent seeks a license fee for the overheard protective measures to be installed above its driveway, Respondent fails to articulate how those measures would substantially interfere with the enjoyment or use of its driveway. Respondent does not dispute that it would still have access to the garbage dumpsters and shed areas within the driveway. To the extent the overheard protections occupy Respondent's airspace, that has already been accounted for by the suspended scaffolding, which appears as if it will occupy the same airspace. Therefore, Respondent is entitled to a license fee for the courtyard scaffolding and CAZ and for the suspended scaffolding but not for the overhead protections for the driveway. In making this determination, the Court adheres strictly to the purpose of a license fee in this context, which, again, is to compensate for a respondent property

150535/2024 Atlas V 110 LLC v. Broadway 111 Owners Corp.
Mot. Seq. No. 1

Page 6 of 16

6 of 16

owner's loss of enjoyment and use of his property. To the extent that Respondent relies on cases in which a court imposed a license fee for sidewalk or roof scaffolding, the circumstances of those cases are distinguishable, and, in any event, those cases are all trial court decisions without binding effect on this Court.

Respondent's proposed license fee of $8,600 per month, however, is plainly excessive in view of the scope and duration of Petitioner's FISP work and the potential impact it will have on the use and enjoyment of Respondent's property, as just determined. The intrusions resulting from the FISP work will affect only two relatively small portions of Respondent's property for a maximum of six months—and possibly only for half that. And the intrusions will only truly substantially interfere with Respondent's tenants' use of a portion of the courtyard that will be blocked from access by the CAZ, primarily requiring storage of tenant bicycles elsewhere, and a portion of airspace for which Respondent has not identified any alternative current or planned use.

In its papers, Respondent raises the specter of potential requests for rent abatements from its tenants as result of the CAZ and seeks reimbursement for any such abatements. Petitioner disputes whether rent abatements are "actual damages" within the meaning of RPAPL § 881 for which Respondent is entitled to indemnification, but both parties appear to agree that, should an award of reimbursement for rent abatements be considered, it may be factored into the license-fee calculation. The parties cite little apposite caselaw, and there does not appear to be any additional caselaw directly addressing the issue. In *Withers Apartments LLC v. Brooklyn Williamsburg Arrondissement LLC*, the trial court imposed a "licensing fee of $6,399 per month which considers the rent abatement given to the respondent's tenants as a result of not having access to the rooftop." No. 505582/2021, 2021 WL 5107814, at *1 (N.Y. Sup. Ct. Kings Cty. Oct. 19, 2021). But in *400 E57 Fee Owner LLC v. 405 East 56th Street LLC*, the First Department remanded for the trial court to consider, among other things, "the license fees *and* rent abatement awarded in favor of respondent." 193 A.D.3d 626, 627 (1st Dep't 2021) (emphasis added). Thus, whereas the trial court in *Withers* constituted its license fee entirely of anticipated rent abatement,[3] the First Department

---

[3] In *Withers*, the trial court provided no explanation of the underlying calculation of its license-fee award. The Court has reviewed the parties' filings in that proceeding and determines that the respondent specifically requested a license fee of $6,399, which constituted 20% of the 2019 pre-COVID-19 rent at the respondent's premises. (Index No. 505582/2021, Dkt. No. 36 at 11)

**150535/2024 Atlas V 110 LLC v. Broadway 111 Owners Corp.**
**Mot. Seq. No. 1**

**Page 7 of 16**

in *400 E57 Fee Owner* seemed to suggest, without addressing the issue directly or in substance, that rent-abatement reimbursement is, or at least could be, a separate type of award from license fees. Ultimately, the difference appears, from a practical perspective, to be mostly semantic, because clearly a court may award rent-abatement reimbursement to a respondent in an RPAPL § 881 proceeding, regardless of what label is applied to such an award. Nevertheless, here the Court will not account for potential rent abatements in its license-fee award, as did the court in *Withers*, based on the First Department's holding in *Panasia Estate* that "the purpose of a license fee is to compensate for loss of enjoyment and diminution in value due to loss of use," *irrespective* of whether "there are some actual damages, such as lost business," 204 A.D.3d at 37-38, and the First Department's apparent consideration of license fees and rent-abatement awards as separate in *400 E57 Fee Owner*. It seems fairly clear that a rent abatement directly resulting from a licensed intrusion would constitute actual damages caused by that intrusion. Such damages, should they occur, are best assessed after the fact, rather than attempting to estimate them in advance, without any certainty that they will occur,[4] as part of a license fee granted before the intrusive work even begins.

Therefore, based on the above considerations, the Court finds that the appropriate license fee in this case is **$3,000 per month**.

## B. Project-Specific Insurance

Respondent next argues that any license granted to Petitioner should be conditioned on it acquiring project-specific insurance, as opposed to maintaining merely commercial general liability insurance. Petitioner objects to this requirement, arguing that project-specific insurance is not required under RPAPL § 881; that acquiring project-specific insurance would be economically unreasonable, potentially costing Petitioner $75,000; and that Petitioner will maintain commercial general liability insurance during the pendency of the FISP work in the amount required by the New York City Department of Buildings ("DOB") and will name Respondent as an additional

---

[4] To that point, the respondent in *Withers* represented to the trial court that it *anticipated* having to provide rent abatements to its tenants because the work would interfere with the premise's rooftop and garden, which were "extensions of [its tenants'] living spaces" and "the heart and soul" of the premises. (Index No. 505582, 2021, Dkt. No. 36 at 10) Respondent makes no similar representations here, instead merely speculating that it could *imagine* needing to provide rent abatements and acknowledging that the contemplated CAZ area currently is used by its tenants primarily for bicycle storage.

150535/2024 Atlas V 110 LLC v. Broadway 111 Owners Corp.
Mot. Seq. No. 1

Page 8 of 16

insured, and that Petitioner's contractor performing the FISP work will maintain a $10 million umbrella insurance policy.

The plain text of RPAPL § 881 does not require a court to condition a license on a petitioner maintaining insurance, but it does require the court to grant the license "upon such terms as justice requires." This text has been interpreted to permit a court to impose, in addition to a license fee and other conditions, an insurance requirement. *See Spence v. Strauss Park Realty, LLC*, 211 A.D.3d 446 (1st Dep't 2022) (affirming trial court's order requiring petitioner to obtain insurance covering respondent); *Panasia Estate*, 204 A.D.3d at 39 (remanding to "Supreme Court to specify the applicable insurance, including policy limits, that petitioner is required to procure in favor of respondents); *Meopta Props. II, LLC v. Pacheco*, 185 A.D.3d 511, 512 (1st Dep't 2020) (affirming trial court's order requiring petitioner to "obtain and maintain insurance to protect respondent's property interests").

The Court has reviewed the RPAPL § 881 caselaw in which the subject work was FISP work and finds no general practice therein of requiring project-specific insurance. *See, e.g., Bd. of Managers of the Columbus House Condo. v. NYC 7900 Holdings LLC*, No. 151374/2023, 2023 WL 6260302, at *2 (N.Y. Sup. Ct. N.Y. Cty. Sept. 20, 2023); *139-94 Apartments Corp. v. 1460 Lexington LLC*, No. 159665/2022, 2023 WL 1795719, at *1 (N.Y. Sup. Ct. N.Y. Cty. Feb. 3, 2023); *East 56th Del*, 2021 WL 5277165, at *9-10; *Bd. of Managers of 40 W. 20th Street Condo. v. Hajdar Holding Ltd.*, No. 160543/2019, 2020 WL 3618929, at *1 (N.Y. Sup. Ct. N.Y. Cty. July 1, 2020). Nor does the Court view project-specific insurance as necessary here based on the facts of this case involving a limited scope of work during a limited timeframe. Rather, Petitioner's general commercial liability insurance, to be held in the amounts required by the DOB, and its contractor's $10 million umbrella insurance policy will, in the Court's judgment, be adequate coverage for Respondent in connection with the intrusions occasioned by Petitioner's FISP work, subject to Respondent being added to those policies as an additional insured.

Respondent contends that "far higher insurance costs are often imposed by courts," citing *AIH Group, LLC v. C.J.F. & Sons Enterprises, Inc.*, 63 Misc. 3d 1231(A) (N.Y. Sup. Ct. Queens Cty. 2019), and *North 7-9 Investors, LLC v. Newgarden*, 43 Misc. 3d 623 (N.Y. Sup. Ct. Kings Cty. 2014), as examples. But both of these cases involved the ground-up construction of new multistory residential and commercial buildings, projects that far exceed the scope and timeframe of Petitioner's

FISP work herein and therefore carry significantly greater risk and justify significantly higher costs.

## C. Bond

Respondent next argues that any license granted to Petitioner should be conditioned on it acquiring a bond in the amount of $1,500,000 to secure its obligations to Respondent under the license. Petitioner responds that a bond is unnecessary where, such as here, the work is routine FISP work, and the respondent has adequate protection against reasonably foreseeable losses or damages through insurance. Petitioner also states that obtaining a $1,500,000 bond to secure any damages arising from its FISP work would be difficult because it is not market to issue bonds for such work, and that any such bond, if any entity would even be willing to issue it, would cost Petitioner between $30,000 and $45,000.

A bond requirement is another type of condition that a court is authorized to impose on an RPAPL § 881 license pursuant to the statute's "upon such terms as justice requires" language. *See DDG Warren*, 138 A.D.3d at 540.

In this case, the Court will not require Petitioner to obtain a bond. Again, the Court finds no evidence in the § 881 caselaw involving FISP work of a general practice of requiring a bond — or evidence that a bond has *ever* been required where such work was at issue.[5] And, for the same reasons that the Court does not view project-specific insurance as necessary under the facts of this case, *see supra*, it does not view a bond as necessary to protect Respondent's property interests. Respondent simply has not presented any facts to this Court suggesting that Petitioner's planned FISP work is other than routine or presents any exceptional or extraordinary risk to its property.

Respondent cites a number of cases, including *AIH Group*, that it contends justify the imposition of a bond here. But each of these cases is again inapposite because of the relative scale of the projects involved in them. Each involved the construction of entire buildings or portions of buildings. Petitioner's project is significantly more limited in size, scope, and potential impact on Respondent's property, and Respondent's interests will be adequately protected by Petitioner's

---

[5] To be sure, this is not to say that a bond will *never* be appropriate in case involving FISP work; as with all things § 881, the specific facts of a case matter.

150535/2024 Atlas V 110 LLC v. Broadway 111 Owners Corp.
Mot. Seq. No. 1

Page 10 of 16

[* 10]

and its general contractor's insurance policies naming Respondent as an additional insured. *See* *334 W. 20 LLC v. Griffin*, No. 161246/2017, 2018 WL 3098709, at *1 (N.Y. Sup. Ct. N.Y. Cty. June 18, 2018) (declining to impose a bond requirement where respondent named an additional insured); *Chirichella v. BCBS Lorimer LLC*, No. 505985/2017, 2017 WL 3386257, at *4 (N.Y. Sup. Ct. Kings Cty. Aug. 3, 2017) (same).

## D.   Indemnity

Respondent next argues that any license granted to Petitioner should be conditioned on it agreeing to defend and indemnify Respondent against tenant rent-abatement claims. Petitioner opposes such an indemnity, arguing that abatement claims are not "actual damages" within the meaning of RPAPL § 881.[6]

RPAPL § 881 expressly provides that a "licensee shall be liable to the adjoining owner or his lessee for actual damages occurring as a result" of the petitioner's entry onto the respondent's property pursuant to the license. While Petitioner is correct that Respondent does not provide any caselaw specifically stating that rent abatements are actual damages within the meaning of the statute, Petitioner also does not provide any caselaw stating that rent abatements are *not* actual damages.

The Court concludes that rent abatements, if they are demonstrably and directly caused by the licensed intrusion, are "actual damages" within the meaning of RPAPL § 881. "Compensatory damages" — actual damages by another name — "are intended to make the victim of wrongdoing whole. The damages are to place the wronged victim in the same position as it was prior to the wrongdoing, without providing the recovery of any windfall." *Syncora Guar. Inc. v. Countrywide Home Loans, Inc.*, 36 Misc. 3d 328, 342 (N.Y. Sup. Ct. N.Y. Cty. 2012) (citing *Ross v. Louise Wise Servs. Inc.*, 8 N.Y.3d 478 489 (2007)). Of course, in the context of a § 881 petition, there is no "wrongdoer"; however, the purpose of compensatory damages is still relevant. If a respondent loses part of its rent income as a direct consequence of a licensed intrusion, it could not be made whole without reimbursement for that loss. Indeed, in *PB 151 Grand LLC v. 9 Crosby, LLC*, 58 Misc.

---

[6] Petitioner also argues that Respondent is seeking an indemnity against first-party claims, in addition to third-party claims, and that such an indemnity would be overbroad and not industry standard. Respondent may have sought such an indemnity during prior negotiations, but the Court reads Respondent's papers as only requesting indemnity concerning rent-abatement claims.

150535/2024 Atlas V 110 LLC v. Broadway 111 Owners Corp.
Mot. Seq. No. 1

Page 11 of 16

3d 1219(A), at *10-11 (N.Y. Sup. Ct. N.Y. Cty. Feb. 2, 2018), a case on which Petitioner relies, the trial court deferred the determination of a hotel's lost earnings caused by the licensed intrusion for determination by a special referee after the license period. Respondent's potential lost rent is functionally equivalent to the hotel's potential lost earnings. Considering rent abatements "actual damages" under RPAPL § 881 is, therefore, consistent with actual damage's purpose as well as the well-established policy that "the owner compelled to grant access should not have to bear any costs resulting from the access." *Panasia Estate*, 204 A.D.3d at 37. Whether Respondent will face any rent-abatement claims is currently speculative, however, and is best addressed by a Special Referee upon the conclusion of the license period.

Beyond this discussion of what constitutes actual damages under RPAPL § 881, Petitioner appears to acknowledge that it is the industry standard to provide Respondent with an indemnity for third-party claims. (*See* Dkt. No. 22 at 7) The Court will require that such an industry-standard indemnity be provided here.

### E.    Legal and Professional Fees

Respondent argues finally that any license granted to Petitioner should be conditioned on it reimbursing Respondent for its legal and professional fees. Petitioner does not oppose this request in its reply.

"RPAPL 881 . . . empower[s] a court to award reasonable attorneys' and engineering fees to the owners or lessees of the neighboring property when the court grants the license" sought by the petitioner. *419 BR Partners LLC v. Zabar*, 209 A.D.3d 604, 604 (1st Dep't 2022) (citing *Panasia Estate*, 204 A.D.3d at 37).

Here, Respondent claims to have incurred $1,692 in engineering fees in connection with the review and modification of Petitioner's proposed protection plans, and it claims to have incurred $3,135 in legal fees in connection with negotiating the license prior to this proceeding and *not less than* $5,000 in connection with this proceeding. Because Respondent has not specified its legal fees incurred in connection with this proceeding, and because further legal fees may be incurred in connection herewith, a Special Referee will determine these damages, based on the rules of evidence, at the end of the license period.

150535/2024 Atlas V 110 LLC v. Broadway 111 Owners Corp.
Mot. Seq. No. 1

Page 12 of 16

[* 12]

12 of 16

The Court has considered the additional contentions of the parties not specifically addressed herein. To the extent that any relief requested by the parties was not addressed by the Court, it is hereby denied.

Accordingly, it is hereby:

**ORDERED and ADJUDGED** that the motion (Seq. No. 1) and petition for a license, pursuant to RPAPL § 881, is **GRANTED**; and it is further

**ORDERED and ADJUDGED** that, commencing no less than 14 days from the provision of the certificates of insurance required below, petitioner is hereby granted a license, pursuant to RPAPL § 881, to enter upon Respondent's property, located at 600 West 111th Street, New York, New York and designated in the Tax Map of New York County as Block 01894, Lot 1002, to: (1) conduct a photographic pre-construction survey; (2) erect overhead protection on or about Respondent's property, in accordance with the protection plans on the NYSCEF docket for this proceeding at document number 4 (the "Plans"); (3) complete certain work from suspending and/or hanging scaffolding from Petitioner's premises, requiring access to the airspace of Respondent's property; (4) maintain a controlled-access zone on Respondent's property, in accordance with the Plans; and (5) install, perform, monitor, and/or maintain any such other protection or measures as may be required by law or by the DOB; and it is further

**ORDERED** that license shall have a maximum term of six (6) months from the commencement of access by Petitioner, but, if Petitioner completes its FISP work prior to the expiration of the maximum six-month term, the license will terminate on the date that the FISP work is completed; and it is further

**ORDERED** that, if Petitioner requires an extension to the maximum term of the license, Petitioner must seek such relief by motion upon good cause shown; and it is further

**ORDERED** that Petitioner shall procure a commercial general liability policy with coverage limits as require by the NYC DOB and shall name Respondent as an additional insured thereon, and such coverage shall remain in place until the completion of Petitioner's FISP work; and it is further

**ORDERED** that Petitioner shall require its general contractor, PRESERV, to name Respondent as an additional insured on its $10 million umbrella insurance policy, and said insurance shall remain in place until the completion of Petitioner's FISP work; and it is further

**ORDERED** that Petitioner shall provide Respondent with certificates of insurance evidencing compliance with the foregoing insurance requirements; and it is further

**ORDERED** that Petitioner is directed to pay Respondent a license fee in the amount of **$3,000** every month during the term of the license **during which Petitioner's FISP work is ongoing**, with the first payment due on the date when Petitioner's FISP work begins and each payment thereafter to be on the first day of each month; and it is further

**ORDERED** that, upon the completion of Petitioner's FISP work, and not later than the end of the maximum license period, Respondent's property within the license area shall be returned to its original condition, and all materials used in construction and any resultant debris shall be removed from the license area; and it is further

**ORDERED** that Petitioner shall notify Respondent in writing within five (5) days of the completion of its FISP work and the removal of all protection and materials and debris from Respondent's property; and it is further

**ORDERED** that Petitioner shall be liable to Respondent for any damages that it may suffer as a result of the granting of this license and all damaged property shall be repaired at Petitioner's sole expense; and it is further

**ORDERED** that Petitioner shall immediately report, in writing, to Respondent any damage to Respondent's property cause by Petitioner's FISP work; and it is further

**ORDERED** that Petitioner shall indemnify and hold harmless Respondent to the fullest extent permitted by law for any liability, claims, damages, or losses, including attorneys' fees, that Respondent may incur as a result of Petitioners FISP work, whether or not caused by the Petitioner's negligence or the negligence of its employees, agents, contractors, or subcontractors; and it is further

**ORDERED** that Petitioner is to reimburse Respondent for all reasonable attorneys' fees incurred by Respondent in prior negotiations of the license and in connection with this proceeding; and it is further

150535/2024 Atlas V 110 LLC v. Broadway 111 Owners Corp.
Mot. Seq. No. 1

Page 14 of 16

14 of 16

[* 14]

**ORDERED** that Petitioner is to reimburse Respondent for all reasonable engineering fees incurred by Respondent in connection with reviewing and commenting on Petitioner's protection plans and in connection with this proceeding; and it is further

**ORDERED** that the amount of reasonable attorneys' fees and engineering fees incurred by Respondent, as well as the amount of any actual and provable damages owed by Petitioner to Respondent incurred directly as a result of the issuance of the license (if not covered by insurance) is hereby referred to a Special Referee or Judicial Hearing Officer ("JHO") to hear and report based on the rules of evidence at the conclusion of the maximum license period or at the conclusion of Petitioner's FISP work, whichever is earlier; and it is further

**ORDERED** that Respondent shall, within thirty (30) days of the conclusion of the maximum license period, or within thirty (30) days of the conclusion of Petitioner's FISP work, which is earlier, serve a copy of this Decision and Order with notice of entry, together with a completed Information Sheet,[7] upon the Special Referee Clerk in the General Clerk's Office (Room 119), who is directed to place this matter on the calendar of the Special Referee's Part or assign this matter to a JHO for the earliest convenient date; and it is further

**ORDERED** that service upon the Special Referee Clerk shall be made in accordance with the procedures set forth in Section J, subsection 2 of the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (Revised August 15, 2019);[8] and it is further

**ORDERED** that any motion to confirm or disaffirm the Report of the Special Referee/JHO shall be made within the time and in the manner specified in CPLR 4403 and section 202.44 of the Uniform Rules for the Trial Courts; and it is further

**ORDERED** that this Court shall retain jurisdiction over this matter; and it is further

**ORDERED** that the Clerk shall mark Motion Sequence 1 decided in all court records.

This constitutes the decision, order, and judgment of the Court.

| July 23, 2024 | | SHAHABUDDEEN ABID ALLY, A.J.S.C. |
| --- | --- | --- |
| DATE | | |

CHECK ONE: ☐ CASE DISPOSED  ☒ NON-FINAL DISPOSITION

---

[7] Copy available at https://www.nycourts.gov/LegacyPDFS/courts/1jd/supctmanh/SR-JHO/SRP-InfoSheet.pdf.

[8] The protocols are available at https://www.nycourts.gov/LegacyPDFS/courts/1jd/supctmanh/Efil-protocol.pdf.

**150535/2024 Atlas V 110 LLC v. Broadway 111 Owners Corp.**
**Mot. Seq. No. 1**

Page 15 of 16